## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| CHRIS CARR and CARR FOR GEORGIA, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| WBJ LEADERSHIP COMMITTEE, INC.; W. BURT JONES in his personal and official capacity as Lt. Governor of the State of Georgia; BURT JONES FOR GEORGIA, INC., | ) ) ) ) ) ) ) ) | Civil Action File No. 1:25-CV-04426-VMC |
| Defendants. | ) ) | |

## DEFENDANT WBJ LEADERSHIP COMMITTEE INC.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR PRELIMINARY INJUNCTION

Josh Belinfante
Georgia Bar No. 047399
jbelinfante@robbinsfirm.com
Vincent R. Russo
Georgia Bar No. 242628
vrusso@robbinsfirm.com
Macy McFall
Georgia Bar No. 411457
mmcfall@robbinsfirm.com
Jane Ashley Ravry
Georgia Bar No. 451038
jaravry@robbinsfirm.com
Robbins Alloy Belinfante Littlefield LLC
500 14th Street, NW
Atlanta, GA 30318
Telephone: (678) 701-9381
Facsimile: (404) 856-3255

**INTRODUCTION**

In 2022, Governor Brian Kemp's election opponents challenged the statute authorizing his leadership committee, and Georgia's Attorney General repeatedly and rightly defended it as constitutional. *See* O.C.G.A. § 21-5-34.2 (the "LC Statute"); *One Ga., Inc. v. Carr*, 601 F. Supp. 3d 1291, 1309 (N.D. Ga. 2022) ("*Carr II*"); *Perdue v. Kemp*, 584 F. Supp. 3d 1310, 1323 (N.D. Ga. 2022). But now, just three years later, Plaintiffs Chris Carr ("Mr. Carr"), acting in his personal capacity, and his gubernatorial campaign committee, Carr for Georgia, Inc. ("Carr Campaign") (collectively, "Plaintiffs"), assert that the Attorney General was wrong and Governor Kemp's opponents were correct. Respectfully, it is Plaintiffs who are now in error.[1]

Even though the Attorney General's defense of the LC Statute in *Kemp* and *Carr II* was largely unsuccessful, Plaintiffs' almost exclusive reliance on the two preliminary injunction orders in those cases is misplaced. For starters, contrary to Plaintiffs' argument, those two orders did not "set clear ground rules for leadership committees." (Doc. 2-1 at 1.) No preliminary injunction order can extend beyond the parties; neither case resulted in the issuance of a final order on the merits of the claims by Governor Kemp's challengers, and no appellate court reviewed the analysis of those orders. *Univ. of Texas v.*

---

[1] WBJ expressly adopts all arguments set forth in the brief of its co-defendants.

*Camenisch*, 451 U.S. 390, 395 (1981) (preliminary injunction orders are not conclusive on the merits). As such, neither established "ground rules" nor bind this Court. *See, e.g.*, *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011).

To be clear, Defendant WBJ Leadership Committee, Inc. ("WBJ") respectfully disagrees with the reasoning of the *Kemp* and *Carr II* orders. But even if this Court deemed those preliminary orders persuasive, they are fundamentally different than this case. In those cases, the State—acting through the members of the State Ethics Commission—was a defendant and, through the Attorney General, offered a full-throated defense of the LC Statute now attacked by Mr. Carr and the Carr Campaign. Not so here.[2] There, the preliminary injunction orders were limited to restraining Governor Kemp's leadership committee from *new expenditures* (1) advocating for his reelection or the defeat of his primary opponent (and later, general election opponent until she secured access to a leadership committee of her own); and (2) defraying ordinary and necessary expenses of Governor Kemp's reelection campaign.[3] *Kemp*, 584 F. Supp.3d at 1329. Nothing in the orders addressed coordination, loans, prior expenditures, advertisements run in support of other candidates (including Mr. Carr's reelection campaign), or anything else.

---

[2] In *Kemp*, plaintiffs also sued the Attorney General in his official capacity.

[3] Only *Carr II* temporarily (for a month) enjoined the leadership committee from soliciting or receiving contributions. 601 F. Supp. 3d at 1309.

Plaintiffs, however, seek against WBJ an egregiously greater exercise of federal judicial power. (Doc. 2-3.) They ask to bar WBJ from making expenditures that could be perceived as having the "purpose of affecting the outcome" of the gubernatorial primary. (*Id.* at 2.) They want retroactive relief—reversing transactions—and call it an injunction. (*Id.*) Most shockingly, they demand that a federal magistrate be appointed to displace the State Ethics Commission and its members (collectively, the "Commission") and oversee and adjudge whether WBJ has and will continue to comply with *state* law. Their requests are anything but narrowly tailored and, instead, are unconstitutional. *Lucero v. Trosch*, 121 F.3d 591, 602 (11th Cir. 1997).

Plaintiffs also lack standing, failed to join a necessary party, cannot show that WBJ is a state actor, or "clearly establish" they are entitled to the "extraordinary and drastic remedy" they seek. *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998).

## **FACTUAL BACKGROUND**

Formed and registered with the Commission in 2022, WBJ is a leadership committee; Lt. Governor W. Burt Jones is its chair. (*Id.* ¶ 11.) Plaintiffs have sued Mr. Jones in his individual and official capacities ("Lt. Governor" or "Lt. Gov. Jones"). (*Id.* ¶¶ 12, 14.) Jones for Georgia, Inc. ("Jones Campaign"), is Mr. Jones's campaign committee for the gubernatorial election. (*Id.* ¶ 13.) In this sense, Mr. Jones and Mr. Carr are comparators, as each can

3

contribute and loan money equally.[4] Likewise, the Carr Campaign and the Jones Campaign are comparators and are subject to the same laws and contribution limitations. (*Id.* ¶ 37.)

Just like campaign committees, WBJ must disclose its donors; but unlike them, WBJ is not subject to contribution limits, nor is it prohibited from soliciting or accepting contributions during the legislative session. O.C.G.A. §§ 21-5-34.2(e), 21-4-35. Among other things, leadership committees can accept contributions and make expenditures in *any* election for *any* candidate, as well as defray the ordinary and necessary expenses incurred with *any* candidate committee. O.C.G.A. § 21-5-34.2(d). They can also coordinate with campaigns, including Mr. Carr's. Indeed, Mr. Carr received contributions from a leadership committee during his 2022 campaign.[5] And he can coordinate with any of the leadership committees that exist today.

Though Plaintiffs do not discuss it, this Court is aware of a third type of committee in Georgia, known as "independent committees." O.C.G.A. § 21-5-3(15). The one supporting Mr. Carr in the current gubernatorial election is called Keep Georgia Strong Action, Inc. (the "Carr IC"). Unlike leadership

---

[4] Neither the Jones Campaign nor the Carr Campaign can solicit or accept contributions during the 2026 legislative session. O.C.G.A. § 21-5-35.

[5] *See, e.g.*, Political Broadcast Agreement Form for Candidate Advertisement, available at https://publicfiles.fcc.gov/api/manager/download/d2e3cc6f-d44b-0ec5-8f3e-6e7ec5807d73/774e5ad5-9b3e-4a36-9c68-f4b980fd8f84.pdf

committees, "independent committees . . . have no restrictions on the amount of funds they raise or how they use them, provided they do not coordinate with candidates or their campaign committee." *New Ga. Project, Inc. v. Carr*, 647 F. Supp. 3d 1325, 1332 (N.D. Ga. 2022), *vacated and remanded sub nom. New Ga. Project, Inc. v. Attorney Gen., State of Georgia*, 106 F.4th 1237 (11th Cir. 2024) (addressing abstention). Like WBJ, the Carr IC can solicit and accept funds during the legislative session. O.C.G.A. § 21-4-35.

In this sense, WBJ and the Carr IC are not that dissimilar. The only real distinction is the inability of the Carr Campaign to coordinate with the Carr IC. Ga. Comp. R. & Regs. 189-6-.04. Indeed, the Carr IC has already been quite active. Before Mr. Jones announced his candidacy, the Carr IC paid for and ran an advertisement attacking Mr. Jones.[6] It has since, too, including attacks against the Lt. Governor based on this litigation.

Mr. Carr and the Carr Campaign apparently do not like Georgia's campaign finance system. Plaintiffs call the LC Statute part of an "unequal campaign finance scheme." (Doc. 2-1 at 7 (citing *Kemp*, 584 F. Supp. 3d at 1320.) And despite suggestions to the contrary, their Complaint raises a facial constitutional challenge to the LC Statute. (Doc. 1 ¶¶ 81, 90.)

---

[6] "Chris Carr vs. Burt Jones: The Clear Choice for Georgia's Future" is available online at https://www.youtube.com/watch?v=CKVUJslO_Bo.

They allege the LC Statute violates their First Amendment and Equal Protection rights, mostly by: **(1)** imposing no contribution caps on WBJ but the same on the Carr Campaign as the Jones Campaign, (Doc. 1 ¶¶ 24, 54, 73, 81); **(2)** allowing WBJ to coordinate with the Jones Campaign but the Carr IC and Carr Campaign cannot coordinate—notwithstanding that any committee formed pursuant to the LC Statute can coordinate with the Carr Campaign, (*id.* ¶¶ 25–26); **(3)** allowing only WBJ and the Carr IC to solicit and accept contributions during the legislative session, (*id.* ¶¶ 27, 44); and **(4)** an undescribed "chilling effect" on fundraising caused by WBJ, (*id.* ¶ 30). Plaintiffs claim that WBJ can "expend substantially more funds" than Plaintiffs, (*id.* ¶ 28), although Georgia law does not limit the amount of expenditures by a campaign or candidate. The Complaint and Plaintiffs' Brief also raise and question the legality of a $10 million loan that Mr. Jones made from his personal funds to WBJ. (*Id.* ¶¶ 62–69; Doc. 2-1 at 2–3, 8–9, 15–17.) But they ignore that the Commission rejected that argument only two days after they filed an ethics complaint shortly after Mr. Jones announced his candidacy.[7]  From this scant record, Plaintiffs ask this Court to impose a far more oppressive injunction than the *Kemp* and *Carr II* orders even considered.

---

[7] Jeff Amy, *Georgia Ethics Commission won't investigate source of Republican Burt Jones' $10M loan*, Atlanta Journal Constitution (July 22, 2025), https://www.ajc.com/news/2025/07/georgia-ethics-commission-wont-investigate-source-of-republican-burt-jones-10m-loan/.

## STANDARD OF REVIEW

As this Court has recognized, a preliminary injunction is an "extraordinary and drastic remedy not to be granted unless the movant clearly establishes" all four requisite elements. *Barred Bus. v. Kemp*, 740 F. Supp. 3d 1309, 1318 (N.D. Ga. 2024) (citation omitted). They are: (1) a "*substantial likelihood of success on the merits*"; (2) irreparable injury, (3) that is greater than the harm an injunction would impose on the non-movant; and (4) the injunction is not adverse to the public interest. *Id.* (emphasis added). Plaintiffs' request for a mandatory injunction is "particularly disfavored" and imposes an even higher burden. *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976).[8]

There is no such thing as a preliminary declaratory order, and Plaintiffs are not entitled to a declaratory judgment at this time. (Doc. 2-3 at 1.) *Camenisch*, 451 U.S. at 395.

## ARGUMENT

## I.    Plaintiffs Lack Standing Under Article III.

To satisfy Article III standing, Plaintiffs must show that WBJ has caused them to suffer cognizable injuries in fact that are "fairly traceable" to WBJ and that would "likely be redressed" by this Court. *Collins v. Yellen*, 141 S. Ct. 1761, 1779 (2021) (quotations omitted). Standing is not "dispensed in gross,"

---

[8] *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting decisions of the former Fifth Circuit issued before September 30, 1981).

meaning Plaintiffs must establish each of these three factors "for each claim . . . and for each form of relief sought." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (citations omitted). Plaintiffs have not satisfied these jurisdictional criteria.

### A. Injury-in-Fact

Plaintiffs' Brief does not distinguish between alleged injuries to Mr. Carr and to the Carr Campaign. It should have. Nothing in the Complaint alleges that Mr. Carr faces any limitations on his ability to contribute to any campaign, including his own. Importantly, Mr. Carr sued in his individual capacity; he is thus not injured by the General Assembly's decision to deny the Attorney General the ability to form a leadership committee.

That leaves only the Carr Campaign, but its arguments also fail. Laws trigger First Amendment scrutiny when they impose unjustified burdens on speech—which in the campaign finance context is the ability to "spend[] for political ends and contribut[e] to political candidates." *Kemp*, 584 F. Supp. 3d at 1332 (citing *FEC v. Colo. Republican Fed. Campaign Comm.*, 533 U.S. 431, 40 (2001)). The Carr Campaign is not limited on spending at all, and it does not contend otherwise. Finally, neither the Carr Campaign nor Mr. Carr can stand in the shoes of some prospective, unidentified donor to claim a constitutional violation of *their* speech. "As a matter of law, [an] injunction's protection extends only to the suing plaintiff." *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2557 (2025).

Plaintiffs fall back on the concept, articulated in *Kemp*, that their First Amendment rights are injured because they cannot *receive* unlimited contributions, and notions of a level playing field. Plaintiffs cite no binding precedent (nor even a final order) that the Carr Campaign has a "right" to receive campaign contributions *at all*. The First Amendment right belongs to the speaker, not the recipient of the contribution. *See Davis*, 544 U.S. at 739–40. Mr. Carr is neither limited nor penalized for contributing to anyone. By contrast, the Supreme Court has frequently upheld different contribution limitations imposed on different types of committees. *See McConnell v. FEC*, 540 U.S. 93, 157 (2003), *overruled in part by Citizens United v. FEC,* 558 U.S. 310 (2010).

This leaves Plaintiffs' purported injury as the perceived lack of a "level playing field." (Doc. 2-1 at 16.) That is not a constitutional injury, and it has been rejected when asserted as government interest. *McCutcheon v. FEC*, 572 U.S. 185, 207 (2014) (citation omitted). The First Amendment is implicated by regulating a donor's ability to contribute because the "contribution serves as a general expression of support for the candidate and his views and serves to affiliate a person with a candidate." *Id.* at 203 (quotation omitted). Mr. Carr is not limited in his ability to contribute, and except in very limited circumstances, the Carr Campaign's right to receive contributions is not a

matter of First Amendment concern nor is it implicated by the LC Statute. Indeed, Plaintiffs can work with any other leadership committee.

That is particularly important here given that Plaintiffs rely exclusively on an allegation that WBJ led some unidentified donors to "raise questions about [Mr. Carr's] campaign." (Doc. 2-2 ¶ 21.) This is not just vague, it is speculative at best. It is also fatal: there is no injury when there is no showing that "prospective candidates could not gain contributions from additional donors." *Cowen v. Sec'y of State of Ga.*, 22 F.4th 1227, 1233 (11th Cir. 2022).

Plaintiffs fare no better on Equal Protection. Mr. Carr is not treated any differently under Georgia law than Mr. Jones. His campaign is treated no differently than the Jones Campaign. Plaintiffs cite no authority that establishes the comparative inability to coordinate as a constitutional violation. And the Supreme Court upheld a federal law allowing independent committees to receive unlimited contributions while limiting contributions to state political parties. *McConnell*, 540 U.S. at 188.

### B. Traceability

Plaintiffs' argument on traceability consists only of two quotes from *Kemp* and *Carr*, and two conclusory statements. As it relates to WBJ, Plaintiffs have not alleged that it has done anything unlawful. Instead, their injuries are not that WBJ, like the Carr IC, is statutorily authorized to raise unlimited contributions, but that O.C.G.A. § 21-5-41 imposes campaign contribution

10

limits, and the Commission and Attorney General enforce them. Plaintiffs explicitly do not challenge that statute, and they chose not to sue the Commission or Attorney General. Their strategy bars their relief. *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1253 (11th Cir. 2020).

## C. Redressability

Plaintiffs also fail to show that an order against WBJ would redress their phantom injuries. Despite Plaintiffs' slim arguments to the contrary, restricting WBJ from soliciting funds or expending any funds would not redress the alleged harm. On Plaintiffs' record and allegations, there is no basis for this Court to conclude that restricting WBJ would make it more "'likely,' as opposed to merely 'speculative,' that" donors would either contribute more to the Carr Campaign or contribute less to the Jones Campaign. *Booker v. Sec'y, Fla. Dep't of Corr.*, 22 F.4th 954, 957 (11th Cir. 2022) (citation omitted). And that is without even considering a topic Plaintiffs would far rather avoid: the Carr IC's ability to accept the same unlimited contributions that WBJ can receive.

The same is true for Plaintiffs' other requested relief. Plaintiffs ask the Court to make WBJ reverse all transactions supporting Mr. Jones, but this does not remedy a constitutional violation on Plaintiffs' speech—it would instead be an after-the-fact constitutional violation on *WBJ's* speech. Plaintiffs' request that WBJ be subjected to the scrutiny of a federal Magistrate

11

Judge in addition to the Commission (like the Carr Campaign) provides no benefit to Plaintiffs. They have not alleged the Commission failed its duties, and they did not even mention that the Commission rejected their attack on Mr. Jones's loan to WBJ.

## II.    Failure to Join a Necessary Party

In prior challenges to the LC Statute, the Commission and Attorney General were always named parties present to defend the law. It is understandable why Plaintiffs did not sue them in this lawsuit, but that does not make the strategic decision right. *Compare Graham v. Carr*, 634 F. Supp. 3d 1343 (N.D. Ga. 2022); *Kemp*, 584 F. Supp. 3d at 1328 n.8; *One Ga., Inc. v. Carr*, 599 F. Supp. 3d 1320, 1330–31 (N.D. Ga. 2022) ("*Carr I*") *Carr II*, 601 F. Supp. 3d at 1299–1300. Indeed, the absence of the Commission precludes Plaintiffs from obtaining the relief they seek under § 1983.

Under Rule 19(a)(1), an absent party "must" be joined if its absence (1) will prevent plaintiffs from obtaining complete relief; (2) could impair an interest of the party; or (3) could subject a defendant to the substantial risk of having "inconsistent obligations." WBJ bears the burden of demonstrating that the Commission is a necessary party, and then the burden shifts to the Plaintiffs to join them. *Weeks v. Hous. Auth. of City of Opp, Ala.*, 292 F.R.D. 689, 692 (M.D. Ala. 2013); *see also Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1280 (11th Cir. 2003).

Plaintiffs cannot obtain complete relief in the absence of the Commission. Fed. R. Civ. P. 19(a)(1)(A). First, the Commission has jurisdiction to investigate and consider Mr. Jones's loan to WBJ. While true that the Commission already rejected Plaintiffs' complaint concerning the same, Plaintiffs chose not to appeal that decision and instead raise it in this lawsuit.[9] *See* O.C.G.A. § 21-5-6(b)(10)(A). Of course, the Commission cannot penalize Mr. Jones for making the loan. *Cruz v. FEC*, 596 U.S. 289, 303–04 (2022). But Plaintiffs say that the loan "compounds" their injury. (Doc. 1 ¶ 64.) Plaintiffs have said consideration of the loan is necessary for relief, but they failed to name the only party that can do anything about it.

In addition, as the State agency charged with enforcing Georgia's campaign finance laws, only the Commission can be restrained from enforcing the campaign contribution limitations imposed by O.C.G.A. § 21-5-42 on the Carr Campaign. While Plaintiffs claim this is not the relief they seek, (Doc. 2-1 at 16), that representation is belied by the explicit facial challenge in their Complaint. (Doc. 1 ¶¶ 81, 90.) This matters. The Court has said that the remedy for government-imposed limitations on speech (here, contribution limits) is not to impose additional limits on speech. *See Davis*, 544 U.S. at 743–44. Thus, the only constitutional thing to do is enjoin the Commission from

---

[9] The Attorney General's office also has authority to investigate and bring an action, but it has declined to do so. O.C.G.A. § 21-5-6(b)(14)(C)(iii).

enforcing the campaign contribution limitations. Put differently, if Plaintiffs had an injury, the only remedy this Court could provide is not the rewriting of the LC Statute, but the enjoining of Commission from enforcing contribution limits against Carr Campaign donors. *Carr I*, 599 F. Supp. 2d at 1336 (recognizing courts cannot rewrite statutes). Plaintiffs' claims do not even hint at seeking this type of relief from the Court.

As it relates to Rule 19(a)(1)(B)(i), the Commission has an unquestionable interest in the subject of this action. The Commission is plainly "involved in an integral way in the" regulation of Georgia campaign finance. *Fla. Wildlife Fed'n Inc. v. U.S. Army Corps of Eng'rs*, 859 F.3d 1306, 1317 (11th Cir. 2017). To protect that interest, with the assistance of the Attorney General, it vigorously defended the LC Statute in at least four similar challenges. That interest is heightened in light of Plaintiffs' request that a federal Magistrate displace them entirely. (Doc. 2-3 at 3.) Further, WBJ is not in a "position to safeguard [those] interests in the litigation." *Fla. Wildlife Fed'n Inc.*, 759 F.3d at 1317. When another leadership committee tried, its arguments were (wrongly) dismissed. *Kemp*, 584 F. Supp. 3d at 1326 n.8.

Finally, WBJ faces the real risk that it would be "unable to comply" with the order sought from this Court and what the Commission may decide, which triggers Rule 19(a)(1)(B)(ii). *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC,* 746 F.3d 1008, 1040 (11th Cir. 2014) (citation omitted). An example makes the

14

point. Plaintiffs ask this Court to enjoin WBJ from making any contributions "in support of the election of Mr. Jones to the office of Governor." (Doc. 2-3 at 2.) If WBJ paid for an advertisement supporting a General Assembly candidate based on their vote for education reform (Senate Bill 233 (2024)), which Lt. Governor Jones championed, is that an advertisement in support of the Lt. Governor or candidate Jones?[10] And, if this Court answers one way, and the Commission answer another way, the real likelihood of inconsistent obligations is clear.

## III.  Plaintiffs Fail to Clearly Establish Any Requisite Factor.

### A. Plaintiffs Have Alleged No Immediate or Irreparable Harm.

Mr. Carr has suffered no injury from either the face of the LC Statute or WBJ's compliance with it. He can contribute to his campaign in any amount, and this ends the inquiry as to whether *his* First Amendment rights have been violated. He is treated no differently than Mr. Jones in this respect. *Id.* The same is true for the Carr Campaign. Critically, neither faces any restriction on their speech. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (deciding the lack of an irreparable injury is dispositive).  Any claim to immediate and irreparable harm is further undermined by the fact that Plaintiffs provided no

---

[10]    Burt    Jones    for    Georgia,    *On    the    Issues*, https://burtjonesforga.com/issues/#school-choice.

15

evidence or allegation of a donor that has been curtailed from supporting the Carr Campaign's efforts.

While it is true that WBJ can help the Jones Campaign's efforts, it does so no more than the Carr IC. Plaintiffs have not shown that the LC Statute has impaired their ability to raise money; indeed, the Carr Campaign has elsewhere touted its fundraising capabilities and success.[11] Nor have they alleged that any donor withdrew support based on the LC Statute. Had they done any of these, they might have satisfied their burden to show immediate irreparable harm. *Compare Doe 1 v. Bondi*, No. 1:25-cv-01998-VMC, 2025 WL 1482733 at *9–11 (N.D. Ga. May 2, 2025). That leaves only coordination, but Plaintiffs claim to not challenge "the entirety of the leadership committee structure," (Doc. 2-1 at 16), which means they can freely coordinate with other leadership committees just as Mr. Carr did in the 2022 election cycle. Finally, Plaintiffs have also not alleged that WBJ impairs potential donors from contributing, in any amount, to the Carr IC, which is already attacking Mr. Jones. Plaintiffs also fail to cite any authority establishing that the inability to

---

[11] Jeff Amy, *Republican Chris Carr raises $1.25M more for 2026 Georgia governor bid* (July 7, 2025), https://apnews.com/article/georgia-2026-governor-republican-chris-carr-fundraising-9833663c4229380a8946540c28cc2957 ("Carr said in a statement that his numbers show 'that kind of energy can't be bought — it's earned, and we're ready to deliver.'").

coordinate represents an injury or immediate harm, and Plaintiffs can currently coordinate with any leadership committee.

**B. Plaintiffs Are Not Substantially Likely to Succeed on the Merits.**

1. *WBJ is not a State Actor Under § 1983.*

Plaintiffs cannot succeed on their Motion, because they have not clearly established that WBJ is a state actor. Section 1983 "excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999). WBJ has received no funding from the State; it cannot act under color of state law; and to the extent that it does, it is no different from other highly regulated private corporations that the Supreme Court has routinely said are not subject to § 1983 liability. *See, e.g.*, *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 357–58 (1974); *Gilmore v. City of Montgomery*, 417 U.S. 556, 574 (1974); *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961). Put simply, this is not one of the "rare circumstances" where a private party is transformed into a state actor. *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992).

Plaintiffs have given this Court no basis to reach a different conclusion. The Complaint makes only a single, conclusory allegation that WBJ is a state actor. (Doc. 1 ¶ 17). The Motion is no better. It wrongly contends that the State "significantly encouraged the creation of leadership committees" (notably not just WBJ), and then it relies solely on the Lt. Governor's role as chairman to

17

claim the State is a "joint participant" in WBJ's efforts. (Doc. 2-1 at 13–14 (citing *Carr*, 601 F. Supp. 3d at 1308).) This is woefully insufficient under any recognized precedent and falls far short of satisfying Plaintiffs' burden.

First, WBJ is not a public corporation. *See Biden v. Neb.*, 600 U.S. 477, 492–93 (2023); *Lebron v. Nat'l RR Passenger Corp.*, 513 U.S. 374, 397 (1995). The LC Statute *authorizes* but does not create leadership committees; it does not authorize leadership committees "explicitly for the furtherance of [state] government goals"; it does not dictate who serves on WBJ's board; and the disclosure requirements for leadership committees are no different than campaign committees. *Id.* How precedent treats political parties is another example. Not every political organization is a political party. *See* O.C.G.A. § 21-2-2(25). But political parties determine who the State must list on a presidential preference primary ballot; thus, at times, political parties can be "creature[s] of state law and [their] actions are attributable to the state." *See, e.g.*, *Duke v. Cleland*, 5 F.3d 1399, 1403 (11th Cir. 1993). By contrast, the State does nothing at the behest of WBJ or any other leadership committee.

Second, the LC Statute is not dissimilar from others in "licensing and regulation [that] are not enough to transform private [parties] into state actors." *Harvey*, 949 F.2d at 1132. WBJ is not "acting under color of state law" when it solicits or receives contributions or coordinates with the Jones

Campaign any more than a physician does by acting pursuant to a state-issued medical license and administering an FDA-approved medication.

Third, WBJ fails the nexus/joint action test applied in *Carr II*. 601 F. Supp. 3d at 1308 (citing *Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001)). Plaintiffs offer the conclusory allegation that WBJ is "intertwined in a symbiotic relationship" with the State. *Nat'l Broad. Co. v. Commc'ns Workers of Am., AFL-CIO*, 860 F.2d 1022, 1027 (11th Cir. 1988). But they fail to and cannot explain how the State is "interdependen[t]" with or a "joint participant" with WBJ's efforts. *Charles v. Johnson*, 18 F.4th 686, 696 (11th Cir. 2021).

The Eleventh Circuit identified three ways to establish the state's joint participation for state actor purposes: (1) conspiring with the state to deprive plaintiff of constitutional rights; (2) the state making an "active choice to partner with a private entity;" or (3) the private party acting as a sovereign state. *Id.* None of these apply. Plaintiffs do not allege that any Defendant "conspired" with the State, and "naked allegations" are insufficient anyway. *Phillips v. Mashburn*, 746 F.2d 782, 785 (11th Cir. 1984). Nor has the State partnered with WBJ: it has not granted WBJ monopoly status (which is insufficient); it has not funded WBJ; and it has not transferred assets to WBJ. *Jackson*, 419 U.S. at 357–58 (addressing monopoly); *Gilmore*, 417 U.S. at 574 (funding and transferring assets). Last, the State has taken no "affirmative role" in WBJ's operations. *Rayburn*, 241 F.3d at 1348 (quotation omitted).

2. *Plaintiffs' First Amendment Claims Fail.*

Plaintiffs have not alleged a viable First Amendment claim, either. As discussed above, the LC Statute places no burden on either Mr. Carr or the Carr Campaign's speech. They are not punished for campaign spending, and they have identified no donor who faces the same. The same arguments WBJ made about standing apply (and are adopted in full) here, but when considering this factor, Plaintiffs' burden is more stringent.

The analysis here also reveals, once again, Plaintiffs' misplaced reliance on *Davis*, which provided the almost exclusive basis of the *Kemp* and *Carr II* orders.[12] As much as Plaintiffs would like, *Davis* does not adopt a rule that different campaign contribution limits for candidates in the same race are *per se* unconstitutional. The injury in *Davis* was not that the campaign contributions varied; that was a symptom of the injury. The injury was that the variance applied only once a candidate decided to *spend more money* on his or her own behalf. The Court viewed the trigger as "an unprecedented penalty" and that is what led to the holding. 554 U.S. at 739. Here, WBJ's ability to accept contributions without limitations (like the Carr IC) is not triggered by anything Mr. Carr does or does not do. This makes *Davis* completely

---

[12] The *Kemp* order cites *Davis* about eleven times. 584 F. Supp. 3d at 1319, 1322, 1323, 1323 n.6, 1324, 1327 n.10, 1328.

inapplicable. Thus, it is apparent that the Plaintiffs' real complaint is that Georgia campaign finance law limits contributions to campaign committees.

Finally, the Commission is the party to best articulate the state interest as it did in *Kemp* by arguing that the LC Statute is closely drawn to disincentivize corruption and to promote transparency. *See* 584 F. Supp. 3d at 1326. Those arguments are even more compelling on these facts.

### 3. *Plaintiffs' Equal Protection Claims Fail.*

Plaintiffs' Equal Protection claims have no foundation in precedent or the reality of campaign finance. The LC Statute does not (1) prevent Mr. Carr from contributing any more or less from any other person; (2) limit the Carr Campaign any more than the Jones Campaign; (3) Plaintiffs can (and do) benefit from the Carr IC; and (4) Plaintiffs can benefit from any other leadership committee, too. This is why *no authority* supports Plaintiffs' position. *Davis* and *Kemp* both expressly declined to address Equal Protection. 554 U.S. at 744 n.9; 584 F. Supp.3d at 1327 n.10. Neither of the two *Carr* orders addressed the issue. 599 F. Supp. 3d at 1320; 601 F. Supp. 3d at 1291. The only court that did is the Tenth Circuit, but its decision expressly hinged upon the fact that "the equal-protection claim was asserted by the *contributors*" and not the candidates or their campaigns. *Riddle v. Hickenlooper*, 742 F.3d 922, 926 (10th Cir. 2014) (emphasis added). Finally, the Supreme Court has explicitly allowed legislatures to impose different contribution limits on different kinds

of committees. *See McConnell*, 540 U.S. at 188; *Cal. Med. Ass'n v. FEC*, 453 U.S. 182, 200–01 (1981). This ends the inquiry.

## C. An Injunction Would Significantly Harm WBJ.

Plaintiffs have the heavy burden to "clearly" establish that the harm an injunction would impose on WBJ would not outweigh their harms in the status quo. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 26 (2008). Plaintiffs' cursory analysis simply cannot survive this level of scrutiny. It is beyond question that the injunction Plaintiffs seek is patently unconstitutional, for many reasons, including that it would clearly violate the First Amendment, and this is fatal to their Motion. "Courts too, are bound by the First Amendment." *Citizens United*, 558 U.S. at 326.

As a threshold matter, Plaintiffs' Brief does not even address the harms that their proposed injunction would cause WBJ. It identifies and discusses the "effect on Mr. Jones [as] requir[ing] him to play on the same, level playing field." (Doc. 2-1 at 15.) That is a different inquiry, and as a result, Plaintiffs have waived any argument that the harm to WBJ is significant.

The effect of Plaintiffs' proposed injunction on WBJ is extraordinary and unconstitutional. It goes well beyond anything imposed in the *Kemp* and *Carr II* orders, and this Court should not be asked to do Plaintiffs' homework for them and come up with something more legally palatable. First, Plaintiffs would have this Court enjoin WBJ from "accepting [all] contributions or

making [any] expenditures until" the gubernatorial primary concludes. (Doc. 2-3 at 2.) This is a brazen restraint on WBJ's speech and that of its donors. *McCutcheon*, 572 U.S. at 204 ("Government may no more restrict how many candidates or causes a donor may support than it may tell a newspaper how many candidates it may endorse."). Beyond this, if Plaintiffs' entire argument is that the LC Statute negatively impacts the Carr Campaign's efforts, they should not be threatened by using WBJ funds to support other candidates in other races, just like a different leadership committee supported Mr. Carr's reelection effort in 2022.

Plaintiffs' request that WBJ (and Mr. Jones) be enjoined from making expenditures for the purpose of "affecting the outcome" of the gubernatorial primary is similarly flawed and would impose massive injuries on WBJ. (Doc. 2-3 at 2.) That standard is vague and not well-defined by the proposed injunction, and the education reform example above demonstrates the fallacy of trying to substitute this Court or a federal Magistrate Judge for the Commission.[13] This Court has previously enjoined Georgia laws on the grounds that they are vague or overbroad, and it should decline Plaintiffs' invitation to

---

[13] Similarly, what about an advertisement asserting the State should more aggressively investigate public officials or bring civil actions? *See* O.C.G.A. §§ 45-15-12, 45-15-17. This Court has previously retrained laws deemed vague in the First Amendment context. *New Ga. Project, Inc.*, 647 F. Supp. 3d at 1350.

impose an even broader injunction on the same grounds. *See New Ga. Project, Inc.*, 647 F. Supp. 3d at 1339.

Plaintiffs' requests for a mandatory injunction requiring WBJ to reverse transactions fails for additional reasons. Most readily, an injunction can provide only prospective relief. *See Alabama v. U.S. Army Corps of Eng'rs,* 424 F.3d 1117, 1133 (11th Cir. 2005). In addition, determining which transactions "support" the aims of the Jones Campaign would impose considerable and unwarranted burdens on WBJ and suffers from the same vagueness problems.

Plaintiffs' last two requests—addressing Mr. Jones's loan and the call to effectively put WBJ under a federal judicial receivership—are beyond the pale. (Doc. 2-3 at 2–3.) First, barring WBJ from repaying any loan represents and unconstitutional injury to WBJ. *Cruz*, 596 U.S. at 296. Second, an injunction effectively displacing the roles of the Commission *and* the Attorney General in enforcing Georgia's campaign finance laws is wholly incompatible with principles of federalism. *Trainor v. Hernandez,* 431 U.S. 434, 441 (1977). Plaintiffs cannot reasonably claim that federal oversight of Georgia campaigns is a good thing but should apply only to WBJ and not them.

## D. Public Interests Weigh Against Granting Plaintiffs' Motion.

Under precedent, "particular" attention must be paid to the "public consequences" of a requested injunction. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). Failure on this prong alone can be dispositive. *Id.*

24

Plaintiffs claim that they are not challenging the "entirety of the leadership committee structure," and that an injunction best protects their unique vision of the First Amendment. (Doc. 2-1 at 15-16.) Not so.

First, Plaintiffs *are* challenging the LC Statute "facially and as applied." (Doc. 1 ¶ 90; *see also id.* ¶ 81.) Try as they might to walk back from that, there is no other way to read the Complaint or Plaintiffs' Brief. The problem is not *how* WBJ is complying with the LC Statute (as applied); the problem for Plaintiffs is that WBJ *can* comply with the LC Statute (facial). Second, Plaintiffs—not the LC Statute or WBJ—seek to limit speech: of WBJ, its donors, and Mr. Jones by seeking to bar or limit loans and expenditures. *See*, *e.g.*, *Cruz*, 596 U.S. at 303–04. They also seek to prohibit others from benefitting from WBJ's exercise of free speech through expenditures to be made "for the purpose of affecting the outcome of *any* election [for] *any* candidate." O.C.G.A. § 21-5-34.2(d) (emphasis added). Given how Mr. Carr has previously benefitted from a leadership committee's expenditures—and still could today from any one of the existing leadership committees authorized by the LC Statute—Plaintiffs' claim to the public interest here rings hollow.

That leaves Plaintiffs with their current position that the LC Statute is unconstitutional. (Doc. 2-1 at 16.) Plaintiffs have not shown it is—as applied or facially. Indeed, they can work with any leadership committee right now.

25

Respectfully submitted this 18th day of August, 2025.

/s/ Josh Belinfante
Josh Belinfante (GA Bar 047399)
Vincent R. Russo (GA Bar 242628)
Macy McFall (GA Bar 411457)
Jane Ashley Ravry (GA Bar 451038)
ROBBINS ALLOY BELINFANTE
    LITTLEFIELD LLC
500 14th Street, N.W.
Atlanta, Georgia 30318
T: (678) 701-9381
F: (404) 856-3255
E: jbelinfante@robbinsfirm.com
    vrusso@robbinsfirm.com
    mmcfall@robbinsfirm.com
    jaravry@robbinsfirm.com

*Counsel for WBJ Leadership
Committee, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1D, I certify that this Notice has been prepared in Century Schoolbook, 13-point font, one of the font and point selections approved by this Court in Local Rule 5.1C.

*/s/ Josh Belinfante*
Josh Belinfante

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day filed the within and foregoing **DEFENDANT WBJ LEADERSHIP COMMITTEE, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR PRELIMINARY INJUNCTION** with the Clerk of Court using the CM/ECF filing system, which automatically sent counsel of record e-mail notification of such filing.

This 18th day of August, 2025.

*/s/ Josh Belinfante*
Josh Belinfante