## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| CHRIS CARR and CARR FOR GEORGIA, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| WBJ LEADERSHIP COMMITTEE, INC.; W. BURT JONES in his personal and official capacity as Lt. Governor of the State of Georgia; BURT JONES FOR GEORGIA, INC., | ) ) ) ) ) ) ) | Civil Action File No. 1:25-CV-04426-VMC |
| Defendants. | ) ) ) | |

### DEFENDANT W. BURT JONES AND BURT JONES FOR GEORGIA, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR PRELIMINARY INJUNCTION

Josh Belinfante
Georgia Bar No. 047399
jbelinfante@robbinsfirm.com
Vincent R. Russo
Georgia Bar No. 242628
vrusso@robbinsfirm.com
Macy McFall
Georgia Bar No. 411457
mmcfall@robbinsfirm.com
Jane Ashley Ravry
Georgia Bar No. 451038
jaravry@robbinsfirm.com
Robbins Alloy Belinfante Littlefield LLC
500 14th Street, NW
Atlanta, GA 30318
Telephone:  (678) 701-9381
Facsimile:   (404) 856-3255

## **INTRODUCTION**

Attorney General Chris Carr defended the statute authorizing leadership committees (the "LC Statute") in 2022. Plaintiff Chris Carr ("Mr. Carr") and his campaign for reelection as Georgia's Attorney General benefitted from the same LC Statute his office defended in 2022. Now that he is seeking to be Georgia's next Governor, he and his campaign committee, Carr for Georgia, Inc. (the "Carr Campaign"), filed this lawsuit that sounds exactly like those who previously challenged the LC Statute and Governor Kemp: former Senator David Perdue and former House Minority Leader Stacey Abrams. Indeed, where the Attorney General once strenuously argued the LC Statute is constitutional, the Plaintiffs now claim it creates "an uneven and discriminatory campaign-finance regime that, on its face" and "facially and as applied, violates Plaintiffs'" constitutional rights. (Doc. 1 at 18, ¶ 81; 20, ¶ 90.)

Defendants W. Burt Jones ("Mr. Jones"), Lt. Governor Burt Jones sued in his official capacity ("Lt. Governor Jones" or "Lt. Governor"), and Mr. Jones's gubernatorial campaign committee, Burt Jones for Georgia, Inc. ("Jones Campaign") (collectively, "Jones Defendants"), submit this brief showing that the Attorney General was right, and the Plaintiffs are wrong now.[1]

---

[1] Defendants adopt and incorporate the arguments set forth in the Brief in Opposition filed by co-defendant WBJ Leadership Committee, Inc. ("WBJ").

First, the LC Statute imposes no cognizable injury on either Plaintiff. Mr. Carr is free to give or loan as much money to his campaign as he wants, and that is the focus of the First Amendment inquiry here. *McCutcheon v. FEC*, 572 U.S. 185, 203 (2014). And, he is not penalized or punished or faced with a different fundraising regulation based on any contribution he makes. *Compare FEC v. Cruz*, 596 U.S. 289, 303–04 (2022) (striking provision that penalized campaign committees repayment of loans made by candidates). Put simply, nothing in the LC Statute burdens any protected right he has under the First Amendment. For similar reasons, the same is true of his Equal Protection argument. He and his comparator, Mr. Jones, are treated the exact same way under Georgia law. Neither is limited in how much money they can give their campaign, and neither can accept campaign contributions in their personal capacity during session. This is dispositive.

The Carr Campaign also fails to allege any cognizable constitutional injury. Like the Jones Campaign, it has no constitutional right to accept unlimited campaign contributions. It cannot obtain relief in the form of limiting WBJ's or Mr. Jones's speech in order to operate under a different "playing field" than the one created by state lawmakers. "No matter how desirable it may seem, it is not an acceptable governmental objective to 'level the playing field,' or to 'level electoral opportunities,' or to 'equaliz[e] the financial resources of candidates.' *McCutcheon*, 572 U.S. at 207 (citations

omitted). Besides, if the Carr Campaign is injured by contribution limits (which really is its argument), it should have sued the State Ethics Commission and its members (the "Commission") and the Attorney General as part of a challenge to the statute that imposes those contribution limits on both campaigns, O.C.G.A. §§ 21-5-41(a), 21-5-42. Moreore, Mr. Carr's independent committee, Keep Georgia Strong Action, Inc. (the "Carr IC"), can accept unlimited contributions anyway. The Carr Campaign's Equal Protection argument not only lacks merit, no court has recognized the claim they assert. Respectfully, this Court should not be the first, particularly on such a preliminary basis.

Given the weak foundations upon which the Plaintiffs' legal theories rest, its additional requests are extraordinary. They seek to transform Mr. Jones in his individual capacity and the Jones Campaign into state actors. That is not just wrong on the law, it would set a terrible precedent as the Supreme Court recognized repeatedly. *See Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 936 (1982) (recognizing strict adherence to the state action requirement of 42 U.S.C. § 1983 is necessary to preserve individual freedom).

But perhaps the most egregious part of Plaintiffs' lawsuit is the relief sought. They would confiscate the proceeds of a loan Mr. Jones made to WBJ. They seek to silence not just WBJ, but Mr. Jones himself as well as any potential donor to WBJ. And, they would subject Mr. Jones, the Jones

Campaign, and WBJ to oversight by a Magistrate Judge.  Plaintiffs know this exceeds any recognized constitutional limitations on the exercise of federal judicial power.  As Attorney General, Mr. Carr has argued before this Court and others the need for judicial restraint. It is unfortunate that Plaintiffs' failure to name the proper parties to this lawsuit leaves that burden solely on the Defendants.  But, defending the right of free speech and federalism is a burden all Defendants proudly assume.  Plaintiffs should not have forced the question, but their attempt at answering it bars the relief they seek.

## FACTUAL BACKGROUND

Mr. Jones is an individual who, in his official capacity, serves as Georgia's duly elected Lt. Governor. (Doc. 1, at 4, ¶¶ 12, 14.)  Both he and Mr. Carr are candidates in the 2026 primary.  (*Id.* at 3, ¶ 9; 4, ¶ 12.)  The Carr Campaign and the Jones Campaign are the two candidates' respective campaign committees.  (*Id.* at 4, ¶¶ 10, 13.)  WBJ is a leadership committee authorized by the LC Statute.  (*Id.* ¶ 11.)

There are at least two nonparties that are relevant to the Plaintiffs' Motion.  The first is the Carr IC, an independent committee supporting Mr. Carr's campaign efforts, which should have registered pursuant to O.C.G.A. § 21-5-34(e) and Ga. Comp. R. & Regs. 189-4-.01. *See New Ga. Project, Inc. v. Carr*, 647 F. Supp. 3d 1325, 1332 (N.D. Ga. 2022) (addressing independent committees), *vacated and remanded sub nom. New Ga. Project, Inc. v. Attorney*

*Gen., State of Georgia*, 106 F.4th 1237 (11th Cir. 2024) (addressing abstention). The second are the Commission and Attorney General, which are charged with enforcing Georgia's campaign finance laws. *See id.* at 1329-30; O.C.G.A. § 21-5-6(b)(14)(C)(iii).

In their individual capacities, Georgia law treats Mr. Carr and Mr. Jones the exact same way. They are subject to the same campaign contribution limits; they may each loan or contribute as much money to their campaigns as they want, and no Georgia law imposes a different campaign finance structure based on their personal spending. Georgia law also treats the Carr Committee and the Jones Committee exactly the same. They are subject to the same contribution limits, they are unable to coordinate with independent committees, and they have no restrictions on the amount of funds they expend in furtherance of their mission.

Since July 2021, Georgia has also allowed the formation of up to fourteen leadership committees like WBJ. O.C.G.A. § 21-5-34.2(a). The Governor and Lt. Governor may serve as the chair of two; the nominees in the general election for those offices may each chair a leadership committee, and the State House and State Senate may each have four per chamber, divided equally between the majority and minority caucuses. *Id.* Unlike campaign committees, but like independent committees, donors to leadership committees are not subject to caps on contributions, and they each can raise money during

the legislative session. O.C.G.A. §§ 21-5-34.2, 21-5-35. Both leadership committees and independent committees can make unlimited expenditures to promote the election or defeat of any candidates. O.C.G.A. § 21-5-34.2(d), 21-5-3(15). Like campaign committees, both independent committees and leadership committees must disclose contributors to the Commission. O.C.G.A. § 21-5-34(f)(1)–(2); 21-5-34.2(e). Thus, the only real difference between a leadership committee and an independent committee is that a leadership committee can coordinate with any campaign and not have that coordination deemed an in-kind contribution to the candidate's campaign subject to contribution limits under *O.C.G.A. § 21-5-41*. But Plaintiffs notably do not challenge enforcement of the campaign contribution limits.

Plaintiffs have not and cannot allege that either the Jones Defendants or WBJ has expended any funds to attack Mr. Carr; their concern is that funds "can be used" that way. (Doc. 1 at 6, ¶ 28.) The Carr IC, however, began attacking Mr. Jones before he declared his candidacy for Governor.[2] For that matter, the Carr Campaign has made Mr. Jones, this lawsuit, and their failed Ethics Complaint against Defendants the center of its public messaging.[3] This

---

[2] Keep Georgia Strong, *Chris Carr vs. Burt Jones: The Clear Choice for Georgia's Future* (Jun. 19, 2025), https://www.youtube.com/watch?v=CKVUJslO_Bo.

[3] Chris Carr for Governor, *News*, https://carrforgeorgia.com/news/.

is a critical distinction between this case and the preliminary injunction order Plaintiffs rely on almost exclusively. *Perdue v. Kemp, 584 F. Supp. 3d 1316 (N.D. Ga. 2022).* Plaintiffs have not alleged the existence of or identified any donor that wishes to contribute more to Mr. Carr's election efforts but has been stymied by the contribution limits in O.C.G.A. § 21-5-41. Instead, the best they can assert is that some have begun "raising questions about [Mr. Carr's] campaign as a result of Mr. Jones' use of his leadership committee." (Doc. 2-2 at 6, ¶ 21.)

Plaintiffs have also not alleged that any of the Jones Defendants or WBJ have failed to comply with Georgia campaign finance law. They suggest that a $10 million loan Mr. Jones made to WBJ "strains credulity," but they fail to tell the Court that the Commission—the State agency charged with investigating allegations of campaign finance violations—rejected Plaintiffs' Ethics Complaint only days after they filed it.[4] (Doc. 1 at 14, ¶ 64.) And Mr. Carr, as the Attorney General, did not take action on the complaint either, which he could on his own initiative under O.C.G.A. § 21-5-6(b)(14)(C)(iii).

They *do*, however, bring a facial and as applied challenge to the LC Statute under 42 U.S.C. § 1983, the First Amendment, and the Equal

---

[4] Jeff Amy, *Georgia Ethics Commission won't investigate source of Republican Burt Jones' $10M loan*, Atlanta Journal Constitution (July 22, 2025), https://www.ajc.com/news/2025/07/georgia-ethics-commission-wont-investigate-source-of-republican-burt-jones-10m-loan/.

Protection Clause of the United States Constitution. (Doc. 1 at 18, ¶ 81; 20, ¶ 90.) But unlike their predecessors, Mr. Perdue and Ms. Abrams, they seek significantly more relief through their proposed order on the injunction.

## STANDARD OF REVIEW

This Court is quite familiar with the standard of review on motions for preliminary injunctions. *New Ga. Project*, 647 F. Supp.3d at 1334–35. Out of an abundance of caution, the Jones Defendants incorporate the portion of WBJ's Brief on the issue as well.

One point does, however, bear some additional discussion. Plaintiffs' proposed order asks this Court to issue declaratory relief now. It should not. Unlike an order issuing a preliminary injunction, judicial orders granting declaratory relief are final. *Haaland v. Brackeen*, 599 U.S. 255, 293 (2023). The Supreme Court has held that they should not be granted without the development of an "adequate and full-bodied record." *Pub. Affairs Associates, Inc. v. Rickover*, 369 U.S. 111, 112–13 (1962).

## ARGUMENT

### I.    As a Legislative Officer, Lt. Governor Jones is Absolutely Immune.

For whatever reason, Plaintiffs sued Lt. Governor Jones as well as Mr. Jones. Because Lt. Governor Jones serves as the President of the Georgia Senate, this Court cannot order any prospective, injunctive relief against the

8

Lt. Governor, even under 42 U.S.C. § 1983, because he is immune from such suits. *Scott v. Taylor*, 405 F.3d 1251, 1254 (11th Cir. 2005) (noting that common law legislative immunity "was not abrogated by § 1983, and it applies with equal force to suits seeking damages and those seeking declaratory or injunctive relief"). Plaintiffs should have filed their lawsuit against the Commission and Attorney General, which are not immune and the only state actors "which [have] any role with respect to the relief sought." *Id.* at 1256.

## II.    Plaintiffs Lack Article III Standing.

Article III demands more than broad accusations—it requires that a plaintiff prove a concrete injury fairly traceable to the defendant's conduct and likely to be redressed by this Court. *Collins v. Yellen*, 594 U.S. 220, 222 (2021). Each plaintiff must make that showing for every claim and every form of relief sought, as standing "is not dispensed in gross." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (quoting *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996)). Plaintiffs fail to carry that burden as to the Jones Defendants.

### A. Injury-in-Fact

While Plaintiffs conflate the alleged injuries of Mr. Carr and the Carr Campaign, this Court cannot. Mr. Carr faces no restriction on contributions or loans he may personally make to his campaign, nor is the Carr Campaign limited in the size of any loan it may secure. *See* O.C.G.A. § 21-5-41(i) (contribution limits shall not apply to a loan to a candidate or campaign

9

committee if, among other things, the loan is based on the credit worthiness of the candidate and the candidate is personally liable for the repayment of the loan). Likewise, Georgia law imposes no cap on the amount the Carr Campaign or the Carr IC may *spend* to promote Mr. Carr's candidacy—or, as they already have, to attack Mr. Jones. The First Amendment's concern is with the ability to engage in *speech*, and Plaintiffs cite no authority showing there is some right of a campaign committee to receive contributions. *See McCutcheon*, 572 U.S. at 203, 207. Further, their desire to "level the playing field" has been specifically rejected as a compelling reason to limit speech. *Id.*

Plaintiffs have neither alleged nor demonstrated any restriction on their ability to "spend[] for political ends and contribut[e] to political candidates." *Kemp*, 584 F. Supp. 3d at 1322 (citing *FEC v. Colo. Republican Fed. Campaign Comm.*, 533 U.S. 431, 440 (2001)). Their sole objection is thus that WBJ, like the Carr IC, is not subject to the campaign contribution limits, and that WBJ can coordinate with any candidate for office, including Mr. Jones. Those are not First Amendment injuries in fact, and Plaintiffs have challenged the wrong statute if they are. *See* Ga. Comp. R. & Regs. 189-6-.04; O.C.G.A. § 21-5-42.

## B. Traceability

Even if Plaintiffs had articulated an injury in fact, none of them are traceable to the Jones Defendants, which is fatal to their claims. *Jacobson v. Florida Sec'y of State*, 974 F.3d 1236, 1253 (11th Cir. 2020). In other words,

Plaintiffs must show that each "defendant caused" their injury. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). And this requirement applies per injury and per defendant. *Davis*, 554 U.S. at 734. The Supreme Court has reiterated that "the relevant inquiry is whether the plaintiffs' injury can be traced to allegedly unlawful conduct of the defendant, not to the provision of law that is challenged." *Collins*, 594 U.S. at 222.

Here, Plaintiffs do not allege that Mr. Jones is steering contributions to the leadership committee, that he is unlawfully operating his campaign committee, or that the campaign committee isn't accepting contributions. Instead, Plaintiffs merely challenge the statute allowing Mr. Jones a leadership committee, while leaving unchallenged the statute that may actually causes them harm: O.C.G.A. § 31-6-42. (Doc. 1 ¶¶ 40–46; Doc. 2-1 at 16 ("There is no challenge in this lawsuit to the contribution limits").)

They have not alleged that the Jones Campaign is causing them any harm, and nor can they. It is subject to the same campaign finance limitations as the Carr Campaign. The Lt. Governor's non-role is even more obvious, which is perhaps why the Plaintiffs' proposed order seeks no relief from him. (Doc. 2-3.)

## C. Redressability

For purposes of the redressability requirement of Article III standing, a plaintiff must demonstrate that it is "'likely,' as opposed to merely 'speculative,'

that the injury will be 'redressed by a favorable decision.'" *Booker v. Sec'y, Fla. Dep't of Corr.*, 22 F.4th 954, 957 (11th Cir. 2022) (citation omitted).  Plaintiffs fail to satisfy this burden for four, independent reasons.

First, Plaintiffs will still suffer their alleged injuries if only the Defendants are enjoined.  As Mr. Carr recalls from 2022, any leadership committee can contribute to and coordinate with any campaign.  If one of the other leadership committees found his messaging worthy of support, it could assist him, just as he received help from one in the 2022 general election. Likewise, if only these Defendants are restrained, nothing would stop another leadership committee from providing the same level of support to the Jones Campaign.  Plaintiffs say they are not "challeng[ing] the entirety of the leadership committee structure."  (Doc. 2-1 at 16.)  Defendants' disagreement with that contention aside, it is fatal to their Motion.  It also demonstrates that their real injury, if they have one at all, is caused by a statute they assert they are not challenging and the Commission (and Attorney General) that enforces it.  They have no redressability against these Defendants.

Second and relatedly, the absence of the Commission and Attorney General also deprives Plaintiffs of being able to satisfy redressability.  *See, e.g.*, *Jacobson*, 974 F.3d at 1255.  It is the entity charged with "enforc[ing] a statute," including the one that Plaintiffs chose not to challenge.  *Id.*

Third, as discussed further below, they further fail on this point because this Court cannot order the overly broad, unconstitutional, and draconian relief they say they must have. *See Georgia Advoc. Off. v. Jackson*, 4 F.4th 1200, 1209 (11th Cir. 2021) (requiring injunctions to be no broader than necessary).

Last, that Plaintiffs seek no relief from the Lt. Governor shows that no injury is redressable by relief entered against his office. *Davis*, 554 U.S. at 734 (recognizing that standing is not dispensed "in gross").

## III.    Procedural Defects Exist in Plaintiffs' Motion.

### A. Failure to Join a Necessary Party

Contrary to the repeated positions of the State of Georgia in *Kemp*, *Carr I*, and *Carr II*, Plaintiffs now claim the LC Statute is unconstitutional and that "no valid state interest . . . can support" the supposed burden it imposes. (Doc. 2-1 at 10.) Their argument on state interest here is little more than a block quote from *Kemp*. And unlike every prior challenger of the LC Statute, Plaintiffs chose not to sue any actual state actors, including the very parties who enforce it. *See Graham v. Carr*, 634 F. Supp. 3d 1343 (N.D. Ga. 2022); *Kemp*, 584 F. Supp. 3d at 1328; *One Ga., Inc. v. Carr*, 599 F. Supp. 3d 1320, 1330–31 (N.D. Ga. 2022) ("*Carr I*"); *One Ga., Inc. v. Carr*, 601 F. Supp. 3d at 1299–1300 (N.D. Ga. 2022) ("*Carr II*"). That choice is fatal under Rule 19(a).

See Fed. R. Civ. P. 19(a)(1); *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1280 (11th Cir. 2003).

This is particularly true when considering Plaintiffs' meritless allegations about Mr. Jones's $10 million loan to WBJ. (Doc. 1 at 14–15, ¶¶ 62–69.) Under binding precedent, this Court cannot issue an order to confiscate the loan, which is an absolute exercise of Mr. Jones's right to "use his own money to facilitate political speech." *Cruz*, 596 U.S. at 303–04 (citing *Davis*, 554 U.S. at 739)). If the Commission reverses its determination that the loan complies with Georgia law, then the Commission must first make that decision and then bring an enforcement action. Plaintiffs cannot obtain "complete relief" without them. Fed. R. Civ. P. 19(a)(1)(A).

Plaintiffs' arguments about the loan (and requested relief to enjoin future ones) also triggers Rule 19(a)(1)(B)(i). That the Commission has previously and vigorously defended itself and the LC Statute in prior litigation plainly demonstrates that it has an "interest relating to the subject of [this] action." *Id. See also New Ga. Project, Inc.*, 647 F. Supp. 3d at 1329–30. That interest would be beyond "impair[ed] or impede[d]" if this Court grants Plaintiffs' requested relief to appoint a Magistrate Judge to step into the shoes of the Commission and determine whether Mr. Jones's loan complied with state law. (Doc. 2-3 at 3.) Plaintiffs wrongly seek to transform this Court into an appellate body reviewing the decision of the Commission to dismiss

14

Plaintiffs' Ethics Complaint, despite their decision not to appeal the dismissal pursuant to O.C.C.A. § 21-5-6(b)(10)(A).[5] Put simply, because Plaintiffs have contended that a federal court's regulation of the private loan is integral to their relief, they cannot also claim that this proceeding can continue without the Commission.

This result is not remedied by the fact that Plaintiffs chose to name the Lt. Governor as a defendant. He is absolutely immune. *Taylor* at 1254. And, in his capacity as a legislative officer, he cannot testify to or explain the state interests in the same way as the Commission itself. *See Florida Wildlife Fed'n, Inc. v. U.S. Army Corps of Eng'rs*, 859 F.3d 1306, 1317 (11th Cir. 2017); *Kemp*, 584 F. Supp. 3d at 1326 n.8.

For the same reasons as those explained in WBJ's brief, there is also a substantial risk that the Jones Defendants will be be "subject to . . . incurring double, multiple, or otherwise inconsistent obligations because of [the Commission's] interest." Fed. R. Civ. P. 19(a)(1)(B)(ii). *See Winn-Dixie Stores, Inc. v. Dolgencorp, LLC,* 746 F.3d 1008, 1040 (11th Cir. 2014).

In sum, all factors in Rule 19(a) are met, and Plaintiffs now bear the burden of showing otherwise or joining the Commission as a party to this lawsuit. *Focus on the Family*, 344 F.3d at 1280.

---

5 *See* Amy, *supra* note [4].

## IV. Plaintiffs Have Not Satisfied the Requirements Necessary for a Preliminary Injunction.

### A. Immediate and Irreparable Harm

Mr. Carr and the Carr Campaign fail to demonstrate any injury—much less an irreparable injury—necessary to support entering the draconian injunction they seek. *Siegel v. Lepore*, 234 F.3d 1163, 1175–76 (11th Cir. 2000) (per curiam). As the Eleventh Circuit has stated, "even if Plaintiffs establish a likelihood of success on the merits, the absence of a *substantial likelihood* of irreparable injury would, standing alone, make preliminary injunctive relief improper." *Id.* at 1176 (emphasis added). *Siegel* also held that the injury "must be neither remote nor speculative, but actual and imminent." *Id.* (citation omitted). Plaintiffs have no injury, much less one that is not purely speculative.

Plaintiffs complain that immediately following Mr. Jones's announcement of his campaign for Governor, the Jones Campaign "also began spending money." (Doc. 2-1 at 3 (citing Doc. 2-2 at ¶ 14, Ex. 3).) Plaintiffs also complain that "Mr. Carr is not currently able to coordinate with any outside entity" to support his campaign without violating campaign finance laws. (Doc. 2-2, ¶ 22.) This is not true. Plaintiffs can freely coordinate with other leadership committees. *See* O.C.G.A. § 21-5-34.2. Plaintiffs have not indicated whether they have received support from any other outside organizations,

notwithstanding public ads supporting Mr. Carr and attacking Mr. Jones paid for by the Carr IC.[6]

Plaintiffs' Motion is aimed at silencing their opponent, not remedying any cognizable—let alone irreparable—harm. Having failed to establish irreparable injury, Plaintiffs cannot justify injunctive relief, and the Motion must be denied.

## B. Likelihood of Success on the Merits

### 1. Defendants Are Not State Actors.

The state action requirement "excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999). The Jones Campaign is privately funded and operated. Mr. Jones is an individual. And Lt. Governor Jones is immune from suit. Because § 1983 applies to state action of private parties "only in rare circumstances," Plaintiffs' claims fail at the threshold. *See Griffin*, 261 F.3d at 1303; *Harvey v. Harvey*, 949 F.2d 1130 (11th Cir. 1992). Plaintiffs do not allege that any Defendant "conspired" with the State to deprive Plaintiffs of their First Amendment or Equal Protection rights. Not only have Plaintiffs not been deprived of any constitutional rights, the state action here is far less than the detailed "licensing and regulations" at issue in *Harvey*. 949

---

[6] *See* Keep Georgia Strong, *supra* note [2].

17

F.2d at 1132.  Indeed, if Plaintiffs' theory were true, every campaign committee and every independent committee would be a state actor by the simple fact that a legislative act authorized them (just as the LC Statute does with WBJ).

Plaintiffs' lawsuit naming the Lt. Governor does not remedy their shortcoming.  The decision to sue the Lt. Governor operates merely as a fig leaf to distract from their weak and cursory arguments about state action, a vital leg in the § 1983 stool. Plaintiffs have sought no relief against the Office of Lt. Governor, have not identified any official action taken by the Lt. Governor that cause Plaintiffs any harm, or shown how an injunction against the Lt. Governor (even if permissible) would remedy the harms they have alleged. Instead, Plaintiffs have named a public official in recognition that at least one must be present, but they sued the wrong one.

### 2.  *Plaintiffs' First Amendment Claims Fail.*

Plaintiffs cannot demonstrate likelihood of success on the merits of their First Amendment claims.  First, *Kemp* and *Carr* are distinguishable on this record because nothing in the LC Statute regulates, punishes, or disincentivizes Mr. Carr from contributing to or loaning money to his own campaign.  That is the holding of *Davis*.  554 U.S. at 738–39.  Second, none of the Plaintiffs' injuries are traceable to any of the Defendants; rather, they are traceable only to two statutes, one of which Plaintiffs bring a facial and as applied challenge, and one they do not raise at all.

18

Plaintiffs' alleged First Amendment injuries—both for standing and on the merits —are that Georgia law (1) imposes caps on campaign contributions to campaign committees but not leadership committees; (2) makes it perhaps more likely that loans to leadership committees will be repaid; and (3) bars campaign committees and independent committees from coordinating but not campaign committees and leadership committees.  (Doc. 2-1 at 7–9.)

Plaintiffs misplace their reliance on two preliminary injunction orders that were never addressed on appeal, contained no final rulings on the merits, and in no way are binding on this Court.  *See Kemp*, 584 F. Supp.3d at 1310; *Carr II*, 601 F. Supp.3d at 1291.  While those cases involved similar challenges to the LC Statute and resulted in preliminary injunctions, their First Amendment holdings rest almost entirely on *Davis*, which as shown addresses a different injury and is, therefore, wholly distinguishable.[7]  *Davis* does not, as Plaintiffs contend, establish that any difference in contribution limits is unconstitutional.  *Cruz* confirms the point, explaining that *Davis* stands only for the principle that restrictions on self-financing "impose[] an unprecedented penalty on any candidate who robustly exercises that First Amendment right."  *Cruz*, 596 U.S. at 303.  The Eleventh Circuit has described *Davis* similarly as "holding that the plaintiff's challenge to certain campaign contribution limits

---

[7] The *Kemp* order cites *Davis* about eleven times. 584 F. Supp. 3d at 1319, 1322, 1323, 1323 n.6, 1324, 1327 n.10, 1328.

was not moot where the plaintiff made a public statement expressing his intent to self-finance another bid for a House seat." *Hall v. Sec'y, Alabama*, 902 F.3d 1294, 1301 (11th Cir. 2018).  Another federal appellate court recognized that the portion of *Davis* Plaintiffs rely on so heavily is actually dicta.  *New York Republican State Comm. v. Sec. & Exch. Comm'n*, 927 F.3d 499, 511 (D.C. Cir. 2019).

   3.  *The LC Statute Advances Important State Interests.*

Defendants are not the proper party against whom Plaintiffs can advance their claims. Instead, those claims are properly brought against the State (through the Commission and Attorney General), who is in the proper position to advocate for the legitimate and important interests advanced by the LC Statute. The State needs to be present in this litigation to defend the LC Statute, as it was in 2022 when the Attorney General and private counsel defended the constitutionality of this statute on behalf of the State. The State deemed the case so significant that it hired – and paid for – legal counsel from Washington, D.C. to defend the lawsuit.

 In any event, Defendants offer the following as legitimate, important state interests advanced by the LC Statute, sufficient to defeat Plaintiffs' claims.

Namely, as the State argued in *Kemp* and *Carr II*, the LC Statute serves the important interests of disincentivizing corruption and promoting

transparency.  *See Kemp*, Case No. 1:22-cv-00053-MHC, Doc. 61 at 30:16–23 (preliminary injunction hearing transcript) (counsel for the State describing the LC Statute's incentivizing contributions to leadership committees rather than dark money groups). *But see Kemp*, 584 F. Supp. 3d. at 1326 n.8 ("Of course, it is State Defendants, not [Governor Kemp's leadership committee], that speak for the State in this matter[.]")

   *4.  Plaintiffs' Equal Protection Claims Fail.*

   Plaintiffs allege that the LC Statute violates their rights to Equal Protection given "Mr. Jones'[s] decision to use his leadership committee in the primary" results in "unequal treatment" between "current statewide elected officials . . . with respect to contribution limits and session fundraising, based solely on his or her status as an eligible official to obtain a leadership committee." (Doc. 1 ¶¶ 86–87.)  These allegations fall well short of clearly and convincingly establishing a substantial likelihood of success on the merits as it relates to Mr. Jones and the Jones Campaign.  *See Siegel*, 234 F.3d at 1176. For example, Plaintiffs ignore that the Carr Campaign and the Jones Campaign are subject to identical campaign contribution limitations.  O.C.G.A. § 21-5-41.  They overlook that there are no limitations on the campaign spending of Mr. Jones and Mr. Carr.  As shown in the WBJ Brief, Plaintiffs also lack any authority to support their expansive reading of the Equal Protection Clause.

## C. Balance of the Harms

Plaintiffs cannot show that the harm caused by their requested unconstitutional injunction on the Jones Defendants is outweighed by their speculative and unrecognized injuries. This matters and bears more than the "cursory" approach Plaintiffs dedicate to it. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 26 (2008).

First, because no action by any of the Jones Defendants—as opposed to the enforcement of the LC Statute—has harmed the Plaintiffs in any way, the harm on them clearly outweighs any purported harm to Plaintiffs. This is particularly true for the Lt. Governor, against whom Plaintiffs allege no causal link to their purported harms.

Second, Plaintiffs' proposed injunction would limit Mr. Jones's ability to contribute or make loans to WBJ in ways that are plainly unconstitutional after *McCutcheon*, *Davis*, and *Cruz*. *See Cruz*, 596 U.S. at 305 ("[T]here is no doubt that the law [restricting loans by candidate to their own campaigns] does burden First Amendment electoral speech[.]"; *see also Kemp*, Case No. 1:22-cv-00053-MHC, Doc. 61 at 35:8–10 (counsel for the State noting that "of course it would be odd to remedy a supposed First Amendment violation with a restriction on speech").

Third, subjecting Mr. Jones and the Jones Campaign to the oversight of a federal Magistrate Judge is alarming and plainly outweighs any perceived

harm attributable to speculative "donors raising questions about [Mr. Carr's] campaign." (Doc. 2-2 at 6, ¶ 21.)

The relief sought cannot be justified by vague statements about donors "raising questions" or concerns about leveling a playing field. In fact, the Supreme Court explicitly rejected the latter as a basis for the government to restrict speech. *McCutcheon*, 572 U.S. at 207.

**D. Public Interests Weigh Against Granting Plaintiffs' Motion.**

By their own words, Plaintiffs *are* making a facial challenge to the LC Statute. The Complaint describes the LC Statute as part of a "campaign-finance regime that, on its face" discriminates against Mr. Carr and the Carr Campaign. (Doc. 1-1 at 18, ¶ 81.) Any lingering doubt as to the scope of the Plaintiffs' challenge is put to rest by their allegations in Paragraph 90: "Mr. Jones' decision to use [WBJ] in the primary results in uneven and discriminatory contribution limits, **facially and as applied**." (*Id.* at 20, ¶ 90.) Try as they might to walk back from that, there is no way to read the Complaint and the Motion any other way. Plaintiffs do not allege that any Defendant is misinterpreting, misapplying, or not complying with the terms of the LC Statute. (*See generally* Docs. 1, 2-1.)) They cannot even describe their alleged harms without mentioning the LC Statute itself. When considering the public interest factor, this matters.

**V.    Plaintiffs Requested Injunction Exceeds All Recognizable Limits.**

Plaintiffs request a preliminary injunction that impermissibly seeks retroactive relief, draconian prospective relief, and mandatory relief.  None of the requests are narrowly tailored as binding precedent requires, and each would result in less speech not more.  (Doc. 2-1 at 16; Doc. 2-3).  *See Kemp*, Case No. 1:22-cv-00053-MHC, Doc. 61 at 27:11–13 (counsel for the State noting that "the answer is more speech, not kneecapping" a party's opponent via injunction).

Despite their recognition that injunctive relief must be "targeted," Plaintiffs' proposal is anything but.  Prior restraint injunctions like the ones Plaintiffs seek must be "precisely tailored." *Sindi v. El-Moslimany*, 896 F.3d 1, 32 (1st Cir. 2018).  They must also "burden no more speech than necessary to serve a significant government interest." *Lucero v. Trosch*, 121 F.3d 591, 602 (11th Cir. 1997). And the injunction itself cannot violate the United States Constitution.  *Citizens United v. FEC,* 558 U.S. 310, 326 (2010).

This also reflects the general requirement that "[i]n the case of a constitutional violation, injunctive relief must be tailored to fit the nature and extent of the established violation. In other words, the injunction must be *no broader than necessary to remedy the constitutional violation*. When a district court fails to follow this principle and drafts an unnecessarily broad injunction, the district court abuses its discretion." *Georgia Advoc. Off.*, 4 F.4th 1200, 1209 (11th Cir. 2021) (quotations omitted) (emphasis added).

24

Mr. Carr and the Carr Campaign want this Court to stop all speech by Mr. Jones and WBJ, stop all speech by donors who wish to express their First Amendment rights by contributing to Mr. Jones or WBJ, and effectively put the Court's thumb on the election scale to help Mr. Carr defeat Mr. Jones in the election to be Georgia's 84th Governor.

Plaintiffs' proposals specific to the present campaign between Mr. Jones and Mr. Carr would burden a significant amount of speech, assuming Plaintiffs have even been harmed (which they haven't shown). Plaintiffs want the Court to choose the options that *most* restrict the speech of Defendants while targeting their requested relief only at WBJ. Plaintiffs have not shown this Court that Mr. Jones or the Jones Campaign can redress these alleged injuries. This is not "leveling the playing field." But an injunction which chooses to instead burden political speech is unconstitutional. *See Schenck v. Pro-Choice Network of W. New York*, 519 U.S. 357, 377, (1997) (striking down injunction because it "burdened more speech than was necessary to serve the relevant government interests").

## <u>CONCLUSION</u>

For the reasons stated above, as well as those stated in WBJ Leadership Committee's opposition brief, the Court should deny Plaintiffs' motion for preliminary injunction.

Respectfully submitted this 18th day of August, 2025.

/s/ Josh Belinfante
Josh Belinfante (GA Bar 047399)
Vincent R. Russo (GA Bar 242628)
Macy McFall (GA Bar 411457)
Jane Ashley Ravry (GA Bar 451038)
ROBBINS ALLOY BELINFANTE
    LITTLEFIELD LLC
500 14th Street, N.W.
Atlanta, Georgia 30318
T: (678) 701-9381
F: (404) 856-3255
E: jbelinfante@robbinsfirm.com
    vrusso@robbinsfirm.com
    mmcfall@robbinsfirm.com
    jaravry@robbinsfirm.com

*Counsel for W. Burt Jones and Burt Jones for Governor, Inc.*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1D, I hereby certify that this motion has been prepared in Century Schoolbook, 13-point font, one of the font and point selections approved by this Court in Local Rule 5.1C.

*/s/ Josh Belinfante*
Josh Belinfante

## CERTIFICATE OF SERVICE

I hereby certify that I have this day filed the within and foregoing **DEFENDANT W. BURT JONES AND BURT JONES FOR GEORGIA, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR PRELIMINARY INJUNCTION** with the Clerk of Court using the CM/ECF filing system, which automatically sent counsel of record e-mail notification of such filing.

This 18th day of August, 2025.

*/s/ Josh Belinfante*
Josh Belinfante

28