IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CHRIS CARR and CARR FOR GEORGIA, INC., <br><br> *Plaintiffs*, <br><br> v. <br><br> WBJ LEADERSHIP COMMITTEE, INC.; W. BURT JONES in his personal and official capacity as Lt. Governor of the State of Georgia; BURT JONES FOR GEORGIA, INC., <br><br> *Defendants*. | Civil Action No. 1:25-cv-04426-VMC |

**PLAINTIFFS' CONSOLIDATED REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

## INTRODUCTION

Neither of Defendants' responses[1] deny that they have control of a significant fundraising advantage unavailable to Plaintiffs. Defendants also do not dispute the facts presented by Plaintiffs to this Court. Instead, they draw incorrect parallels between an independent committee and a leadership committee, argue that a broader challenge to the entirety of Georgia's campaign-finance system is the right approach, and claim that Plaintiffs should have sued state officials.

All of Defendants' arguments attempt to obscure the key point: Mr. Jones can raise *unlimited* funds *that he controls* in support of his primary campaign for Governor. Mr. Carr can only raise *limited* funds that he controls in support of his primary campaign for Governor. And "[t]he First Amendment 'has its fullest and most urgent application precisely to the conduct of campaigns for political office.'" *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 302 (2022) (quoting *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971)). This fundamental unfairness is antithetical to the First Amendment and this Court should grant Plaintiffs' motion.

---

[1] Defendants filed two briefs, both of which incorporated specific portions and the entirety of each other. *See* [Doc. 13 at 13 at 2 n.1], [Doc. 14 at 2 n.1, 9, 16, 26] (all page citations to docket entries are to the blue numbers at the top of each page). Under L.R. 7.1(D), briefs are limited to 25 pages for a response and this Court has discretion on whether to consider briefs that exceed limits. L.R. 7.1(F).

1

## ARGUMENT

I. **Defendants do not dispute most of Plaintiffs' facts.**

Perhaps most surprisingly, while citing a handful of websites, Defendants do not provide any declaration or testimony responding to the evidence presented by Plaintiffs. That means Defendants do not deny that Mr. Jones (1) is currently raising money for his leadership committee [Doc. 2-2 at ¶¶ 15–19], (2) is using his leadership committee in support of his gubernatorial campaign in the primary [Doc. 2-2 at ¶¶ 13, 20], (3) has an advantage in his ability to communicate messages due to holding the office of Lt. Governor [Doc. 2-2 at ¶ 23], (4) has raised and can still raise money into his leadership committee during legislative sessions [Doc. 2-2 at ¶¶ 9–11], (5) that Mr. Jones' actions have directly affected Mr. Carr's fundraising [Doc. 2-2 at ¶ 21], and (6) can use a personal loan[2] to eliminate contribution limits for his campaign account. Defendants merely claim none of these significant advantages matter and—amazingly—accuse *Plaintiffs* of trying to gain an advantage in the primary. [Doc. 14 at 26].

---

[2] Defendants inaccurately claim that the Ethics Commission rejected Mr. Carr's argument about "the legality of a $10 million loan." [Docs. 13 at 7; 14 at 8, 15–16]. But Defendants know that was not Mr. Carr's complaint: the Carr Campaign asked the Commission to investigate how Mr. Jones went from reporting having approximately $700,000 in cash and cash equivalents in 2021 to having $10 million in cash he reported as loaning to his leadership committee in 2025. The Commission stated that the personal financial disclosure form did not provide enough evidence to open an investigation.

2

Defendants also draw a false equivalence with a separate organization supporting Mr. Carr's campaign.³ And their attempts at covering up the advantages held by Mr. Jones extends as far as to claim that "[t]he only real distinction is the inability of the Carr Campaign to coordinate with the Carr IC." [Doc. 13 at 6]. The "only real distinction"? That prohibition on coordination is the entire point—Mr. Jones benefits from access to unlimited cash he controls in support of his campaign while Mr. Carr cannot control any outside group with unlimited fundraising supporting his candidacy.

Finally, Defendants never dispute that they are asking this Court to "uph[o]ld the constitutionality of a law that imposes different contribution limits for candidates who are competing against each other." *Davis v. FEC*, 554 U.S. 724, 738 (2008).

## II. Plaintiffs have standing.

### A. Plaintiffs have shown an injury.

Defendants claim there is no injury to Plaintiffs because only a contributor

---

³ As this Court knows, independent committees can support and oppose candidates for office but can only do so if they do not provide contributions to the campaign through coordinated expenditures. *New Georgia Project, Inc. v. Carr*, 647 F. Supp. 3d 1325, 1332–33 (N.D. Ga. 2022), *vacated and remanded sub nom. New Georgia Project, Inc. v. Att'y Gen., State of Georgia*, 106 F.4th 1237 (11th Cir. 2024). Despite Defendants' attempt at false equivalence, [Doc. 13 at 12], Plaintiffs would be satisfied for Defendants to agree to not use the leadership committee in the primary if Mr. Jones also only had access to an independent committee.

3

could sue. [Docs. 13 at 9, 14 at 11]. But "the [Supreme] Court has squarely held that a plaintiff who suffers unequal treatment has standing to challenge a discriminatory exception that favors others." *Barr v. Am. Ass'n of Political Consultants, Inc.*, 591 U.S. 610, 634–35 (2020) (plurality opinion) (collecting cases); *see also Davis*, 554 U.S. at 734 (standing to challenge a statute "allowing his opponent to receive contributions on more favorable terms"). And in this context, "the right of association and the right of expression are not analyzed in a vacuum." *Perdue v. Kemp*, 584 F. Supp. 3d 1310, 1322 (N.D. Ga. 2022).

Further, Defendants miss an important point on Georgia's campaign-finance system. It is not only illegal for a contributor to *make* a contribution greater than the campaign-finance limits—it is also illegal for a candidate to solicit or *receive* contributions in excess of those limits. O.C.G.A. § 21-5-41(a). Defendants reject this concept, using logic that would deny an injury to a candidate if the legislature set different limits for non-incumbent candidates, which is an "absurd position." *Perdue*, 584 F. Supp. 3d at 1323 n.6; [Doc. 13 at 10]. Further, while Defendants claim a chilling effect on donations is not an injury, the sole case they cite for that concept only evaluated the burden on the right to vote for purposes of a ballot-access law, not an injury in fact. *Cowen v. Sec'y of State of Georgia*, 22 F.4th 1227, 1232–33 (11th Cir. 2022).

Because Plaintiffs are "unable to receive unlimited contributions in the same

4

manner as" Mr. Jones, they have "an injury in fact based on the unequal campaign finance scheme established by O.C.G.A. § 21-5-34.2." *One Georgia, Inc. v. Carr*, 601 F. Supp. 3d 1291, 1302 (N.D. Ga. 2022).

### B.   Plaintiffs have shown traceability and redressability.

The injury suffered by Plaintiffs is traceable to WBJ Leadership Committee's and Mr. Jones' decision to utilize the leadership committee in the primary election—thus, it is "an injury resulting from the application or threatened application of an unlawful enactment [that] remains fairly traceable to such application." *Cruz*, 596 U.S. at 297. Defendants do not contest they made that decision. Further, Plaintiffs provided evidence that Mr. Jones and his leadership committee are raising funds for use in the primary [Doc. 2-2 at ¶¶ 13–20], which means he is steering contributions to that entity. *Contra* [Doc. 14 at 12]. And an order limiting Mr. Jones' use of WBJ Leadership Committee in the primary election redresses the injury, because the unequal campaign-finance limits would be removed.[4] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The fact that candidates can try and persuade other officials to support their candidacy is not remotely the

---

[4] Indeed, no other entity could be enjoined in a way that redresses the injury because an order allowing other entities to coordinate is not relief available. *See One Georgia*, 601 F. Supp. 3d at 1299–1300. And Plaintiffs have not claimed an injury from Georgia's Certificate of Need statute. [Doc. 14 at 12] (citing O.C.G.A. § 31-6-42).

same as Mr. Jones helming the very entity that supports his primary campaign.

Finally, Mr. Jones' campaign committee is likely to be part of an overall harm to Plaintiffs by participating in receiving funds from the leadership committee through a personal loan from Mr. Jones, as explained in Plaintiffs' brief, further demonstrating a causal connection. [Doc. 2-1 at 16–17].

### III. The Ethics Commission is not a necessary party.

Despite this Court repeatedly enjoining only leadership committees—and specifically declining to enter an injunction against only state officials—Defendants also insist that the State Ethics Commission is a necessary party. Defendants are wrong.

Plaintiffs can obtain full relief without the Commission. The key point is Mr. Jones' decision to use his leadership committee in the primary election against a candidate without one. Defendants claim that enjoining all contribution limits in Georgia is the only path forward, but this is nonsensical. The solution here is not to give Plaintiffs access to a leadership committee. *See Graham v. Carr*, 634 F. Supp. 3d 1343, 1356–57 (N.D. Ga. 2022), *opinion vacated, appeal dismissed sub nom. Graham v. Att'y Gen., State of Georgia*, 110 F.4th 1239 (11th Cir. 2024) (mootness). Instead, Plaintiffs seek an order granting the same relief as in *Perdue*, 584 F. Supp. 3d at 1329 and *One Georgia, Inc.*, 601 F. Supp. 3d at 1309, along with additional relief against WBJ Leadership Committee given the unique nature of the use of

6

leadership committees in this primary election.[5]

Finally, the remedy for failure to join a necessary party is simply an order joining that party. Fed. R. Civ. P. 19(a)(2). It does not end this case.

## IV. Plaintiffs meet the four requisites for an injunction

### A. Plaintiffs will suffer irreparable harm absent an injunction.

Defendants begin with the second element of an injunction, focusing on whether there is harm, and again drawing false equivalence to an independent committee supporting Mr. Carr. [Docs. 13 at 16–17, 14 at 17–18]. Under Defendants' theory, which largely tracks their injury arguments, if Congress allowed former Presidents to raise unlimited funds, but not other candidates, then-Vice President Harris would have had no cause of action to challenge that hypothetical law in 2024. For all the reasons discussed above, that makes no sense.

Further, there is no equivalence between WBJ Leadership Committee, which by law *must* be chaired by Mr. Jones, and an independent effort that Georgia law prohibits Mr. Carr's involvement. And the option to try and persuade some other

---

[5] Contrary to Defendants' repeated assertions, Plaintiffs do not seek to resolve the legality of Mr. Jones' loan to WBJ Leadership Committee under Georgia law. Plaintiffs have demonstrated how that loan will likely be used to circumvent contribution limits in the primary, which Defendants do not deny, undergirding the need for some third party to monitor spending. Mr. Jones did not make the loan to his *candidate* committee as any candidate with resources could. He made it to his *leadership* committee. That matters for purposes of the relief sought here.

7

leadership committee to support Mr. Carr's candidacy would not solve anything—because he still cannot control that committee like Mr. Jones can. The point is that Mr. Jones' decision to use his leadership committee in the primary means he gets a second campaign committee that is unavailable to Mr. Carr.

Finally, the timing emphasizes the harm. Under the new O.C.G.A. § 21-2-34(c)(2)(A) that goes into effect on January 1, 2026, the next reports for Mr. Jones' candidate committee and his leadership committee are due on January 31, 2026, and will not be filed until a few days into February with the grace period. *Id.*; O.C.G.A. § 21-2-34.2(e). Only then will anyone be able to know how Mr. Jones is utilizing his leadership committee in the primary—and at that point, both candidate committees will be restricted from fundraising during the legislative session, while WBJ Leadership Committee will be able to continue raising and spending funds in support of Mr. Jones' gubernatorial campaign. O.C.G.A. § 21-2-35(a) (session fundraising ban only applies to candidate committees of public officers elected statewide). There is more time between now and January 31 than between January 31 and the primary election itself. It makes no sense to wait until mere months from the primary before harm can exist.

## B. Plaintiffs are substantially likely to succeed on the merits.

### 1. *Defendants are state actors for purposes of 42 U.S.C. § 1983.*

In 2022, Georgians First Leadership Committee claimed it was not a state

8

actor, making many of the same arguments WBJ Leadership Committee makes here. *One Georgia*, 601 F. Supp. 3d at 1308. But this Court concluded that, under the fact-specific test, a leadership committee's "ability to perform its function is entirely dependent upon and intertwined with" a state official, to the point that "without [Lt. Governor Jones], there can be no [WBJ Leadership Committee]." *Id.* As a result, the statute means that Mr. Jones as a state official "has 'so far insinuated [him]self into a position of interdependence with the [WBJ Leadership Committee] that [he] is a joint participant in the enterprise." *Id.* (quoting *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1348 (11th Cir. 2001) (citation and alterations omitted)).

Defendants do not contest that the constitutional deprivation faced by Plaintiffs is "caused by the exercise of some right or privilege created by the State." *Charles v. Johnson*, 18 F.4th 686, 694 (11th Cir. 2021). Instead, they focus on the nexus/joint action test. But a leadership committee exists by virtue of being chaired by a state official such that it becomes a "willful participant in joint activity with the State or its agents" to be a state actor. *Id.* at 696 (quoting *United States v. Price*, 383 U.S. 787, 794 (1966)). Without the State official—in other words, a joint activity of the State with the leadership committee—the committee ceases to exist as a matter of law. That demonstrates a "position of interdependence with the [leadership committee such] that it was a joint participant in the enterprise." *Id.*

9

(quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 357–58 (1974); *see also id.* at 697 ("willful participation" can show joint action).[6] Further, the State has "significantly encouraged the action alleged to violate the Constitution" by allowing leadership committees to exist without limits on their use in campaigns against candidates without them. *Nat'l Broad. Co. v. Commc'ns Workers of Am., AFL-CIO*, 860 F.2d 1022, 1026 (11th Cir. 1988).

At the end of the day, WBJ Leadership Committee can only deprive Plaintiffs of their First Amendment rights because of the existence of a statutory framework requiring approval of a government entity (the Ethics Commission under O.C.G.A. § 21-5-34.2), meaning that the leadership committee must be a state actor because it is using a state procedure that relies on state intervention. *See, e.g.*, *Edmondson v. Leesville Concrete Company, Inc.*, 500 U.S. 614, 622–23 (1991) (private attorney using peremptory challenges in race-biased manner was a state actor); *Baxter v. Fulton-DeKalb Hosp. Auth.*, 764 F. Supp. 1510, 1517 (N.D. Ga. 1991) ("A deprivation of federal rights constitutes state action under the fourteenth amendment when it is 'caused by the exercise of some right or privilege created by the state'" (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

---

[6] Defendants' claim that Plaintiffs must show a "conspiracy," citing *Phillips v. Mashburn*, 746 F.2d 782, 785 (11th Cir. 1984), is not supported by precedent. *Charles*, 18 F.4th at 697.

      *2.*     *Plaintiffs are likely to prevail on their First Amendment claim.*

In trying to defend a system of inequality in access to resources for a gubernatorial primary election, Defendants underplay the impact of *Davis*. [Doc. 14 at 19–21]. First, this Court rejected identical arguments as "absurd" in *Perdue*, 584 F. Supp. 3d at 1323 n.6. Second, *Davis* was clear in its requirement of a level playing field.[7] And it invalidated a disclosure regime that was "designed to implement the **asymmetrical contribution limits**" of the millionaire's amendment. *Davis*, 554 U.S. at 744 (emphasis added). The problem with the challenged statute in *Davis* was that it did not "raise[] the contribution limits for all candidates." *Id*. at 737. Further, the solution here is not to eliminate contribution limits for *candidate* committees—the solution is to stop Mr. Jones from "effectively negat[ing] the contribution limit upon which all candidates for Governor in the primary election" are limited by using his *leadership* committee in the primary. *Perdue*, 584 F. Supp. 3d at 1323. And *Cruz* dealt with loans but rooted those principles in "'fundamental First Amendment activities'" which is the very right implicated here by an unequal campaign-finance structure. *Cruz*, 596 U.S. at 310

---

[7] Defendants take *McCutcheon* out of context when claiming there is no constitutional right to a level playing field in a campaign. [Doc. 14 at 3] (quoting *McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 206–07 (2014). The Supreme Court was discussing legitimate government interests for burdening First Amendment rights. *Id*. While states cannot use other supposed objectives to support limits on speech, none of those are present here.

11

(quoting *Buckley v. Valeo*, 424 U.S. 1, 14 (1976).

Defendants do not even attempt to argue a state interest exists. Instead, they just kick that question to the Commission. [Docs. 13 at 22, 14 at 22]. But the idea that a leadership committee which enables Mr. Jones to raise money from lobbyists during legislative sessions is "closely drawn to disincentivize corruption and to promote transparency," *id*., was beyond the pale in *Perdue* and remains so here.[8]

       3.     *Plaintiffs are likely to prevail on their Equal Protection claim.*

Defendants misconstrue the Equal Protection claim. Of course, different types of committees can have different contributions limits—just not when controlled by the same candidates in the same elections. Mr. Carr is being treated differently as a candidate for the Republican nomination for Governor than the similarly situated Mr. Jones, due solely to the use of the leadership committee structure in the primary election. While *Riddle* dealt with the contributor side, Defendants cannot contest that there are no "meaningful differences between the" primary candidates. *Riddle v. Hickenlooper*, 742 F.3d 922, 927 (10th Cir. 2014). And as a result, the structure impinges on a fundamental right and there is no sufficient

---

[8] Defendants' citation of *New York Republican State Comm. v. Sec. & Exch. Comm'n*, 927 F.3d 499, 511 (D.C. Cir. 2019), to undercut *Davis* also falls flat. The D.C. Circuit was dealing with the supposed government anti-corruption interest involved in regulating political contributions of broker-dealers. No such anti-corruption interest can support the use of leadership committees here, especially when unlimited session fundraising is permitted.

12

state interest or narrow tailoring, as this Court explained in the First Amendment context in *Perdue*, 584 F. Supp. 3d at 1323–27.

### C. The balance of the harms favors Plaintiffs.

Mr. Jones is acting through his leadership committee in using it in the primary election, so no arguments are waived about WBJ Leadership Committee's harm. *See F.T.C. v. Leshin*, 618 F.3d 1221, 1235–36 (11th Cir. 2010).

Defendants do not contest the significant harm to Plaintiffs from Mr. Jones' decision to use WBJ Leadership Committee in the primary election. Indeed, they cannot, because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Defendants instead focus on the scope of the injunction, which is necessary given the unique circumstances here. Mr. Jones and WBJ Leadership Committee are acting with full knowledge of this Court's 2022 decisions.[9] This Court can set the parameters of an injunction, but the need for more extensive relief is rooted in the way Mr. Jones has chosen to use his leadership committee. Indeed, an order that enjoins Defendants "from expending funds beginning on the date of this Order (1) for the purpose of advocating for the re-election of [Lt.]

---

[9] Counsel for Defendants represented Georgians First Leadership Committee, Inc. in *Perdue* and *One Georgia*, which was the entity enjoined in both cases and which did not pursue an appeal to resolution.

13

Governor [Jones] or the defeat of an opponent of [Lt.] Governor [Jones] through the 202[6] primary election and 202[6] primary runoff election, if any there be, or (2) to defray ordinary and necessary expenses incurred in connection with [Lt.] Governor [Jones'] campaign for re-election as Governor of Georgia though the 202[6] primary election and 202[6] primary runoff election," *Perdue*, 584 F. Supp. at 1329, and which enjoins Defendants "from soliciting or receiving contributions until and unless [Lt.] Governor [Jones] becomes the Republican Party nominee for Governor of Georgia in the 202[6] primary election or primary election runoff," *One Georgia*, 601 F. Supp. 3d at 1309, is the baseline.

The reason why further relief is required here is bound by the facts which Defendants do not contest. With knowledge of the prior orders, they are spending funds for the primary. With knowledge of the prior orders, they can utilize the leadership committee to wash contribution limits from donations into Mr. Jones' candidate committee. And no one will have any knowledge of any of that until the election is just a few months away. The extreme violation of the Constitution requires significant remedies to protect Georgia voters and ensure the Republican primary is fair—but those remedies would be limited to ensuring compliance with this Court's orders, not a "federal judicial receivership." [Doc. 13 at 25].

### D. The public interest favors an injunction.

Plaintiffs seek an injunction due to Mr. Jones' use of his leadership

committee in the primary election—an action he does not contest. As a result, Plaintiffs have shown "that the [leadership committee s]tatute as applied is an impermissible infringement of Plaintiffs' First Amendment rights." *One Georgia*, 601 F. Supp. 3d at 1307. Defendants simply deflect, claiming that Mr. Carr received leadership committee support in 2022. [Doc. 13 at 5, 26]. But that support, by its terms, took place from October 14 through November 8, 2022—at the end of the general election when all major-party candidates for Governor had leadership committees. That is a far cry from Mr. Jones' use of his leadership committee in the primary here and Mr. Carr being left without the ability to coordinate.[10]

Finally, "the public has no legitimate interest in the enforcement of an unconstitutional statute." *Perdue*, 584 F. Supp. 3d at 1328 (quoting *Scott v. Roberts*, 612 F.3d 1279, 1297 (11th Cir. 2010)). Defendants' lack of a response shows they want an uneven playing field for primary elections and believe that the government is permitted to place its whole hand on the scale in favor of certain state officials without violating the Constitution.

## CONCLUSION

This Court should grant Plaintiffs' motion to protect the election process.

---

[10] While the proposed order discusses declaratory relief because it mirrors the relief sought in the Complaint, resolving that question is not necessary to entering an injunction. But the discussion in *Haaland v. Brackeen*, 599 U.S. 255, 293 (2023), [Doc. 14 at 9], relates to which parties are bound by a declaratory judgment.

Respectfully submitted this 20th day of August, 2025.

*/s/ Bryan P. Tyson*
Bryan P. Tyson
Georgia Bar No. 515411
btyson@clarkhill.com
Casey L. Frew
Georgia Bar No. 753765
cfrew@clarkhill.com
**Clark Hill PLC**
3630 Peachtree Road NE
Suite 550
Atlanta, Georgia 30326
678.370.4377 (phone)

*Counsel for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned certifies that the foregoing Reply has been prepared in Book Antiqua 13, a font and type selection approved by the Court in L.R. 5.1(B).

*/s/ Bryan P. Tyson*
Bryan P. Tyson